IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DANIEL M. SERRANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 11-1057-CV-W-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying his application for supplemental security income ["SSI"] benefits under Title XVI of the Act, and application for disability benefits under Title II of the Act. 42 U.S.C. § § 401, 1381 et seq. Pending before the Court is plaintiff's brief, defendant's brief, and plaintiff's reply brief. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

1

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814

(8th Cir. 1994).

Discussion

Plaintiff was 45 years old on his alleged onset date. He has a General Equivalency Diploma ["GED"]. Plaintiff has past relevant work as a construction laborer, material handler, wire mesh realer, meat trimmer, janitor, and light cleaner. He alleges disability because of paranoid schizophrenia and polysubstance dependence. He contends that he is unable to concentrate and focus; believes people are talking about him; hears voices and has hallucinations; and does not want to be around other people.

The ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date, June 15, 2006. She further found that the medical evidence established that plaintiff suffers from schizophrenia, a severe impairment. It was her finding that plaintiff's mental impairments did not meet or medically equal the Listing of 12.03. She found that plaintiff was not fully credible. The ALJ concluded that plaintiff could not perform his past relevant work. She found that plaintiff has the residual functional capacity ["RFC"] to perform simple, repetitive, and routine job duties that did not require anything other than incidental public contact, or more than occasional contact with coworkers and supervisors. She also found that plaintiff should never be expected to understand, remember or carry out detailed instructions.

Based on the opinion of a vocational expert, the ALJ found that plaintiff could perform the representative jobs of hospital cleaner, order filler, collator operator, and wire-wrapping machine operator. Therefore, it was her finding that plaintiff is not under a disability as defined

by the Act.

Plaintiff contends that the ALJ's decision should be reversed because she failed to give proper weight to the opinion of the treating physician; failed to properly assess plaintiff's credibility; and relied on flawed vocational expert testimony.

It is plaintiff's position that the ALJ gave little weight to the opinion of the treating psychiatrist, Dr. Arjumand Jaffri. A review of the medical records in this case establish that Dr. Jaffri was plaintiff's only mental health treatment provider; he examined him regularly for almost four years; and he provided detailed medical findings in support of his opinions. The doctor began treating plaintiff in July of 2005 for his complaints of depression and anxiety. Plaintiff advised him that he had been hospitalized for psychiatric reasons in 1985 and 2000. The doctor found, upon examination, that he suffered from paranoia, an anxious and depressed mood, delusions, and poor insight and judgment. The doctor diagnosed psychosis. Over time, Dr. Jaffri prescribed various anti-psychotic and anti-depressant medications, including Seroquel, Risperdal, Haldol, Cogentin, Abilify, Celexa, and BuSpar. Despite medication adjustments and changes, plaintiff continued to express paranoid thoughts, including auditory and visual hallucination. The treatment notes indicate that the doctor observed disorganized thoughts, paranoid delusions, auditory hallucinations, low mood, recurrent thoughts of death, and poor judgment and insight. The record indicates that plaintiff was hospitalized in April of 2007 for suicidal ideation. When he saw Dr. Jaffri at a follow-up appointment, he indicated he was not taking his medication because of financial reasons. He denied any recent drug or alcohol use. The doctor noted that he was disheveled and had auditory hallucinations upon examination. His medications were restarted. In June, after plaintiff had been in jail for failure to pay child

4

support and had had his medications changed, Dr. Jaffri diagnosed him with psychosis and history of schizophrenia. The doctor continued to increase or change his medications, noting that when he switched plaintiff from Haldol to Risperdal because of side effects, his auditory hallucinations returned. During the course of Dr. Jaffri's treatment of plaintiff, he frequently presented with a disheveled appearance, and reports of auditory hallucinations. Although the treatment notes indicate that plaintiff's condition was better at some visits than others, he complained of depression, hallucinations, and recurrent suicidal ideation over the course of the treatment period. He exhibited signs of paranoia, persecutory ideations, and decreased mood. Dr. Jaffri continued to prescribe different medications for plaintiff's schizophrenia and signs of depression.

Dr. Jaffri completed a Medical Source Statement-Mental ["MSS-M"] on October 24, 2007. He opined that plaintiff suffered from psychosis, depressive disorder, and polysubstance abuse in remission. He stated that his clinical findings included mood disturbance, emotional lability, delusions or hallucinations, anhedonia or pervasive loss of interest, feelings of guilt/worthlessness, difficulty thinking or concentrating, and suicidal ideations or attempts. The doctor listed plaintiff's primary symptoms as "depression, agitation, auditory hallucinations, anhedonia, suicidal ideation, low self-esteem." [Tr. 279]. The doctor found plaintiff to be markedly limited in some subcategories of all areas. For example, under "Sustained Concentration and Persistence," he found plaintiff markedly limited in his ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; ability to sustain ordinary routine without supervision; ability to work in

5

coordination with or proximity to others without being distracted by them; and ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Under "Social Interaction," he found plaintiff to be markedly limited in the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  Dr. Jaffri indicated that plaintiff did experience episodes of deterioration or decompensation in the workplace that caused him to withdraw from that situation and/or experience exacerbation of signs and symptoms.  He explained this by noting plaintiff's depression, auditory hallucinations, and recurrent suicidal ideations.  The doctor indicated that plaintiff was not a malingerer; that he had good days and bad days; and that he might be absent from work, on the average, more than three times a month.  In a report dated September 8, 2008, Dr. Jaffri opined that plaintiff was totally disabled.

     The ALJ rejected these opinions, giving "[l]ittle weight" to the MSS-M, [Tr. 21], finding that the doctor's MSS-M assessment was not consistent with his own treatment notes.  As inconsistencies, the ALJ noted that Dr. Jaffri rated plaintiff as having mainly marked limitations in the areas of sustained concentration and persistence, but that the treatment notes "largely reveal fair concentration upon mental status examination. . . ." [Id.].  She also stated Dr. Jaffri listed auditory hallucinations among the more frequent or severe clinical findings, but that "[t]his description is not entirely consistent with Dr. Jaffri's own treatment notes, which refer to claimant's auditory hallucinations as 'sporadic' and 'under control.'" [Id.].  The ALJ stated, in summary,  that the RFC was supported by the objective clinical findings, and "the medical

6

opinion of the consultative examiner which is consistent with objective assessments made by State agency disability experts." [Tr. 22]. The ALJ stated that she gave "great weight to the examination report of Louis T. Bein, MS, a State agency consultative psychologist, as it is consistent with the Psychiatric Review Techniques Form and Mental Residual Functional Capacity assessments completed by State agency disability experts. . . ." [Tr. 21].

Plaintiff's medical records indicate that he has a history of mental illness, and has been diagnosed with schizophrenia. The records indicate that he has difficulty complying with medication instructions, which is not unusual for individuals with mental illness. He has been prescribed a variety of anti-psychotic medications at different times, and has been hospitalized for suicidal ideation, most recently in 2007. He describes hearing voices. He has worked occasionally at some manual-type jobs. He has a past history of drug and alcohol use, but the ALJ found that his substance abuse was not material to a finding of disability.

While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations. The opinion regarding a claimant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and

7

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). By contrast, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." Id.

In this case, the ALJ discounted the opinion of the treating psychiatrist, and relied instead on the opinion of the consultative examiner and non-examining state agency sources. She stated that she gave great weight to the opinion of the one-time consultative examiner, Mr. Bein, and the non-examining agency expert. Her only comments regarding their opinions, however, were that the MMPI-2 test was not valid, and that this may have been because plaintiff responded randomly, responded "true" or "false" to all the items or was had been "faking bad." [Tr. 21]. The Court notes that Dr. Jaffri noted in his assessment of plaintiff that he was not a malingerer. The ALJ did not otherwise explain his reasons for affording great weight to the opinion of Mr. Bein, who examined plaintiff on one occasion, and that of the non-examining psychologist, Dr. Spence.

The Court has carefully reviewed the records and finds that the ALJ erred in not giving greater weight to the opinion of the treating physician, and did not give legally adequate reasons for the decision not to rely on the medically supported assessment of the degree of plaintiff's limitations. Under the Social Security regulations, the opinion of a treating physician is accorded special deference, and the ALJ may only discount or disregard that opinion where there is better or more thorough medical evidence, or where a treating physician's opinion is so inconsistent that it undermines the credibility of such opinions. After reviewing the record as a whole, the Court finds that there was not substantial evidence to conclude that the opinions of

8

plaintiff's psychiatrist were inconsistent with plaintiff's treatment records, otherwise inconsistent with other medical evidence of record, or inconsistent with the testimony adduced at the hearing. In terms of plaintiff's concentration, the Court finds no meaningful inconsistency. The doctor opined that plaintiff's concentration, among other things, would be markedly limited in the work environment, based on his experience with and treatment of plaintiff over nearly a four-year period. The fact that he noted on occasion in his treatment notes that plaintiff's concentration was fair in his office does not create a significant inconsistency. The ALJ also found it inconsistent that Dr. Jaffri listed auditory hallucinations among the more frequent or severe clinical findings, but that his treatment notes indicated that the hallucinations were sporadic or under control. Given the record as a whole, auditory hallucinations were one of the most frequently listed symptoms. The fact that they were not constant does not suggest that they were not frequent or severe. Plaintiff testified that heard voices on a daily basis, although not constantly. Stress makes the hallucinations worse. He hears voices that tell him to hurt himself or "hurt other people or do things that are stupid I guess." [Tr. 46]. He also stated that he could not work a full day because he gets stressed, starts to hear things and gets paranoid, which then becomes a vicious cycle. The Court finds no inconsistencies in the doctor's assessments that plaintiff's auditory hallucinations were one of the more frequent or severe clinical findings.

It is the Court's finding that the ALJ failed to support his decision to reject the opinion of Dr. Jaffri, as well as the record as a whole regarding plaintiff's limitations. Given the fact that the totality of the record supports the conclusions of Dr. Jaffri regarding plaintiff's limitations, the Court finds that the ALJ erred in the lack of weight afforded to this opinion. It is apparent that the record supports a finding that plaintiff has a serious mental illness, which would impede

his ability to maintain gainful employment. Further, the only contrary evidence upon which the ALJ relied was that of a non-treating consultant. The Court finds the ALJ erred in discounting the opinion of Dr. Jaffri, and finds that the record contains substantial evidence to support the conclusion that plaintiff is disabled due to a severe mental impairment.

Based on a full review of the record, the Court finds that there is not substantial evidence in the record as a whole to support the ALJ's decision to find that plaintiff does not suffer from a severe disabling mental condition. Accordingly, the court finds the Commissioner's decision should be reversed, and this case should be remanded for the payment of benefits.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 8/31/12